UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMAZON.COM, INC., et al., | CASE NO. C22-1183 MJP |
| Plaintiffs, | ORDER GRANTING MOTION FOR DEFAULT JUDGMENT |
| v. | |
| JIANSHUI XIE, an individual, a/k/a JIANSHUI XEI, et al., | |
| Defendant. | |

This matter comes before the Court on Plaintiffs' Motion for Default Judgment and Permanent Injunction. (Dkt. No. 48.) Having reviewed Plaintiffs' Motion and all supporting materials, the Court GRANTS the Motion, ENTERS default judgment against Defendant, and PERMANENTLY ENJOINS Defendant on the terms set forth in this Order.

## BACKGROUND

Plaintiff King Technology, Inc. develops, markets, and sells water-treatment and santitation products, with the use of nine different registered trademarks (which the Court refers

1   to as the "Frog" or "King" trademarks). (First Amended Complaint ¶ 4 (Dkt. No. 24).) Along

2   with Plaintiffs Amazon.com, Inc. and Amazon.com Services LLC (together "Amazon"), King

3   alleges that Defendant Jianshui Xie sold counterfeit Frog-branded products through Amazon's

4   webstore. (<u>Id.</u> ¶¶ 5-6.) Plaintiffs aver through a variety of Amazon seller accounts, Xie sold

5   $190,384 worth of counterfeit King products through Amazon's store between July 2021 through

6   March 2022. (Declaration of Elaine Haskel ¶¶ 3 (Dkt. No. 51).) Amazon refunded $132,986 to

7   customers who made purchases of counterfeit King goods sold by Xie. (<u>Id.</u> ¶ 7.)

8       Plaintiffs pursue the following claims: (1) King alone pursues a trademark infringement

9   and counterfeiting claim pursuant to 15 U.S.C. § 1114 (FAC ¶¶ 47-53); (2) all Plaintiffs pursue

10  false designation of origin claims pursuant to 15 U.S.C. § 1125(a) (FAC ¶¶ 54-70); (3) all

11  Plaintiffs pursue Washington Consumer Protection Act claims (FAC ¶¶ 71-75); and (4)

12  Amazon.com Services LLC alone pursues a breach of contract claim (FAC ¶¶ 76-82).

13      In addition to the allegations in the Amended Complaint, which the Court accepts as true,

14  a King representative states that King reviewed a sample of the Frog-branded products from the

15  selling accounts associated with Xie that had been shipped to Amazon for sale in the

16  Amazon.com store. (Declaration of Katelyn Ward ¶¶ 5-8 (Dkt. No. 52).) King determined that

17  these samples bore the King trademarks identified in the First Amended Complaint, but were

18  counterfeit. (<u>Id.</u>) The King representative "believes that [Xie's] misuse of the King Technology

19  Trademarks deceived customers into believing that they were buying authentic King Technology

20  products when the goods were actually counterfeit." (<u>Id.</u> ¶ 9.) The King representative also states

21  that "[b]y selling counterfeit King Technology FROG-branded products, [Xie] diverted

22  legitimate sales that would have otherwise been made by King Technology" and that this

23  damaged King's reputation and goodwill. (<u>Id.</u>)

24

1    Plaintiffs have served Defendant and obtained entry of default. (Dkt. Nos. 35, 37.)

2    Plaintiffs now move for default judgment and entry of a permanent injunction. (Dkt. No. 48.)

3                                      **ANALYSIS**

4    **A.    Legal Standard**

5        The Court has discretion to default judgment. Fed. R. Civ. P. 55(b); see Alan Neuman

6    Prods., Inc. v. Albright, 862 F.2d 1388, 1392 (9th Cir. 1988). "Factors which may be considered

7    by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility

8    of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of

9    the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute

10   concerning material facts; (6) whether the default was due to excusable neglect, and (7) the

11   strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits."

12   Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In performing this analysis, "the

13   general rule is that well-pled allegations in the complaint regarding liability are deemed true."

14   Fair Hous. of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002) (quotation and citation

15   omitted). And "[t]he district court is not required to make detailed findings of fact." Id.

16   **B.    Jurisdiction**

17       Before entering default judgment, the Court must assure itself that it has subject matter

18   jurisdiction and personal jurisdiction over Xie.

19       There is little doubt that the Court has subject matter jurisdiction over Plaintiffs' claims.

20   Plaintiffs brings claims under various federal laws, which fall within the Court's original

21   jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a). And the Court has

22   supplemental jurisdiction over Plaintiffs' state-law claim pursuant to 28 U.S.C. § 1367(a).

23

24

1    The Court also finds that it has personal jurisdiction over Xie, who is a nonresident. First,

2    Plaintiffs have alleged that Xie agreed to Amazon Services' Business Solutions Agreement,

3    which required Xie to consent to jurisdiction in this Court for claims involving the misuse of

4    intellectual property rights in the Amazon store. See Chan v. Soc'y Expeditions, Inc., 39 F.3d

5    1398, 1406–07 (9th Cir. 1994); (FAC ¶¶ 9, 29-37 & Ex. B.). This alone satisfies the Court that it

6    has personal jurisdiction. Second, the Court finds that it has personal jurisdiction due to Xie's

7    purposeful direction of its activities in this forum, pursuant to Fed. R. Civ. P. 4(k)(2), the federal

8    long-arm statute. (See FAC ¶ 13.) Under Rule 4(k)(2), personal jurisdiction may be established

9    over a defendant if the claims arise under federal law and: "(A) the defendant is not subject to

10    jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is

11    consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). To measure

12    whether the exercise of personal jurisdiction is consistent with the Constitution, the Court

13    engages in a "due process analysis [that] is nearly identical to the traditional personal jurisdiction

14    analysis with one significant difference: rather than considering contacts between the [defendant]

15    and the forum state, we consider contacts with the nation as a whole." Lang Van, Inc. v. VNG

16    Corp., 40 F.4th 1034, 1039 (9th Cir. 2022) (citation and quotation omitted). To satisfy due

17    process in this context, Plaintiffs must demonstrate that: (1) the nonresident defendant has either

18    purposefully directed his activities at the United States or purposefully availed himself of the

19    privilege of conducting activities in the forum; (2) the claim arises out of or relates to the

20    defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play

21    and substantial justice. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir.

22    2004). If Plaintiffs satisfy the first two elements, the burden shifts to Defendant to make a

23    compelling case that the exercise of jurisdiction would not be reasonable. Id. To establish

24

1    "purposeful direction," the Court applies the three-part "effects" test from <u>Calder v. Jones</u>, 465

2    U.S. 783 (1984), which requires that the defendant must have "(1) committed an intentional act,

3    (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be

4    suffered in the forum state." <u>Mavrix Photo, Inc. v. Brand Techs., Inc.</u>, 647 F.3d 1218, 1228 (9th

5    Cir. 2011) (quotation and citation omitted).

6         The Court finds that Plaintiffs have satisfied the requisite elements of Rule 4(k)(2).

7    Plaintiffs pursue claims under federal law against Xie, who is outside of any state court's general

8    jurisdiction. And the Court finds that the exercise of personal jurisdiction comports with the

9    Constitution. The Court points to three factors supporting this latter finding.

10        First, Xie purposefully directed his activities at the United States. All three elements of

11   the "effects" test are satisfied. One, Xie used his Amazon seller accounts to advertise the sale of

12   the counterfeit King products. Two, Xie directed the counterfeit King products to consumers in

13   the United States by using Amazon's website, which targets American buyers. Three, it was

14   foreseeable that Defendant's marketing and sales of the counterfeit King products would harm

15   Amazon in the United States, where it is headquartered.

16        Second, Plaintiffs' claims arise out of Xie's forum-based activities. The Ninth Circuit

17   "relies on a 'but for' test to determine whether a particular claim arises out of forum-related

18   activities and thereby satisfies the second requirement for specific jurisdiction. <u>Ballard v.</u>

19   <u>Savage</u>, 65 F.3d 1495, 1500 (9th Cir. 1995). Plaintiffs have satisfied this by showing that their

20   claims would not exist but-for Xie's sale of counterfeit King products and his decision to target

21   consumers in the United States.

22        Third, because Plaintiffs have satisfied the first two prongs of personal jurisdiction under

23   Rule 4(k)(2), the burden shifts to Defendant to show personal jurisdiction is not reasonably

24

1    exercised here. By failing to appear in this matter, Xie has conceded that the exercise is

2    reasonable. But for the sake of completeness, the Court has considered this factor and finds that

3    the exercise of personal jurisdiction is reasonable. The Court does so by balancing the following

4    factors:

> (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in
> defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's
> state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient
> judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's
> interest in convenient and effective relief; and (7) the existence of an alternative forum.

8    Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1021 (9th Cir. 2002). The balance of

9    these factors shows that that the exercise of personal jurisdiction is reasonable. Xie purposefully

10   directed his activities at the United States. There is no evidence of the burden on Xie in

11   defending himself in this Court or conflicts with the sovereignty of a foreign state. The United

12   States has an interest in making sure that Plaintiffs' valid intellectual property rights are

13   protected and this forum can efficiently resolve the conflict. And Plaintiffs have an interest in

14   obtaining convenient and effective relief in this Court where there are no alternative fora

15   identified. Accordingly, the Court finds the exercise of personal jurisdiction to be reasonable.

16   **C.    Eitel Factors Favor Default Judgment**

17        The Court reviews the Eitel factors to assess whether default judgment should be entered

18   and in what specific amounts. On balance, the seven Eitel factors weigh in favor of entry of

19   default judgment in Plaintiffs' favor.

20        **1.    Factor One: Prejudice to Plaintiffs**

21        Without entry of default judgment Plaintiffs will be prejudiced. Plaintiffs have attempted

22   to litigate this case and vindicate their rights under federal and state law against Xie. Xie failed to

23   appear or participate in this litigation despite being served through alternative means. Plaintiffs

24

face prejudice by not being able to obtain complete relief on their claims against Xies without entry of default judgment. This factor weighs in favor of granting default judgment.

### 2. Factors Two and Three: Merits of Plaintiffs' Claims and Sufficiency of the Amended Complaint

Plaintiffs have demonstrated the merit of their claims and the sufficiency of the Amended Complaint. The Court reviews each claim.

#### a. Trademark Infringement

To prevail on a trademark infringement claim, King must establish (1) a protected trademark and (2) the use of that trademark by a party accused of infringing on the trademark is likely to cause consumer confusion. See Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1354 (9th Cir. 1985). Federal registration of a mark provides prima facie evidence of the mark's validity and entitles the plaintiff to a strong presumption that the mark is protectable. See Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc., 419 F.3d 925, 927-28 (9th Cir. 2005).

Accepting the allegations as true and reviewing the declaration from King's representative, the Court finds that King has proved its trademark infringement claim by demonstrating the following: (1) it owns the King Trademarks (FAC ¶ 4, Ex. A; Ward Decl. ¶ 3 & Ex. A); (2) it reviewed samples of products that Xie shipped to Amazon (FAC ¶¶ 38-39; Ward Decl. ¶¶ 5-8); and (3) it determined those products were counterfeit imitations of King-branded products that illegally bear the King Trademarks based on deviations from the authentic products' packaging and materials. (Id.) The Court finds entry of default on the claim proper.

#### b. False Designation of Origin Claims

To prevail on their claims of false designation of origin, Plaintiffs must show Xie "(1) use[d] in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics

1    of his or another person's goods or services." <u>Freecycle Network, Inc. v. Oey</u>, 505 F.3d 898, 902

2    (9th Cir. 2007). Any person who believes they are likely to be damaged by such an act may sue.

3    15 U.S.C. § 1125(a); <u>Lexmark Int'l, Inc. v. Static Control Components, Inc.</u>, 572 U.S. 118, 131–

4    32 (2014).

5          Both King and Amazon have proved their false designation claims. Plaintiffs have shown

6    that Xie sold counterfeit imitations of King-branded products bearing the King trademarks. (FAC

7    ¶¶ 38-39; Ward Decl. ¶¶ 5-8.) This misuse of the trademarks was designed to deceive the public

8    as to the authenticity of the products Xie sold. (FAC ¶¶ 5-6, 51, 58.) And Xie's use of the King

9    trademarks harmed its goodwill. (<u>See</u> FAC ¶¶ 3-7; Ward Decl. ¶ 9.) Similarly, Xie deceived

10   Amazon about the authenticity of the counterfeit products it was advertising, marketing, offering,

11   and selling through Amazon's website. As alleged, this violated Amazon Service's Seller

12   Agreement. (FAC ¶ 32, Ex. B.) And Xie'suse of Amazon's website to sell its goods harmed

13   Amazon's reputation and brand, and caused it to issue refunds. (FAC ¶¶ 2, 17-25, 65, 68; Haskel

14   Decl. ¶ 7.) The Court finds entry of default on these claims proper. The Court also notes that

15   Plaintiffs do not move for default judgment on their false advertising claims, which are therefore

16   not the subject of this Order. (<u>See</u> Mot. at 8 n.4.)

17          c.    **CPA Claim**

18          To prevail on their CPA claim, Plaintiffs must establish "(1) an unfair or deceptive act or

19   practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a

20   person's business or property, and (5) causation." <u>Panag v. Farmers Ins. Co. of Wash.</u>, 166

21   Wn.2d 27, 37 (2009) (citing <u>Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.</u>, 105

22   Wn.2d 778, 784 (1986)). "[A] claim under the Washington CPA may be predicated upon a per se

23   violation of statute, an act or practice that has the capacity to deceive substantial portions of the

24

1    public, or an unfair or deceptive act or practice not regulated by statute but in violation of public

2    interest." <u>Klem v. Wash. Mut. Bank</u>, 176 Wn.2d 771, 787 (2013).

3          The Court agrees with Plaintiffs that they have stated a claim under the CPA. Xie's sale

4    of counterfeit products is an unfair and deceptive act that occurred in trade, affecting the public

5    interest, and which has harmed Plaintiffs' goodwill. The Court finds entry of default on this

6    claim proper.

7                 **d.**       **Breach of Contract Claim**

8          To prevail on its breach of contract claim, Amazon Services must show the breach of a

9    valid contract and damages proximately caused by the breach. <u>Nw. Indep. Forest Mfrs. v. Dep't</u>

10   <u>of Lab. & Indus.</u>, 78 Wn. App. 707, 712 (1995). Amazon Services has here provided sufficient

11   evidence of a valid and enforceable contract—the Business Solutions Agreement—that Xie has

12   breached in a variety of ways through their sale of counterfeit goods. (FAC ¶¶ 29-37, 77, 81 &

13   Ex. B.) And by paying refunds in the amount of $132,986 for goods Xie sold in violation of the

14   Agreement, Amazon Services has shown damages proximately caused by the breach. (<u>See</u>

15   Haskel Decl. ¶ 7.) The Court finds entry of default on this claim proper.

16             **3.**      **Factor Four: Sum of Money at Stake**

17         Amazon has determined that Xie had aggregate sales of $190,384 in counterfeit King

18   products. Given the size of the sales, this factor weighs in favor of default judgment.

19             **4.**      **Factor Five: Possibility of Dispute of Material Facts**

20         The Court finds little possibility that the core, material facts are in dispute. Not only has

21   Xie failed to appear in this action, but Plaintiffs have provided detailed evidence in support of

22   their claims that is likely difficult to be rebutted. This factor favors entry of default judgment.

23

24

1      **5.      Factor Six: Whether Default is Due to Excusable Neglect**

2          There is no evidence that Xie's failure to appear is due to excusable neglect. This factor

3      favors entry of default judgment.

4      **6.      Factor Seven; Strong Policy in Favor of Decision on the Merits**

5          The Court maintains a strong policy preference in favor of resolution of Plaintiffs' claims

6      on the merits. But Xie's decision not to appear in this case vitiates against this policy. This factor

7      weighs in favor of entry of default judgment.

8                              *      *      *

9          Having considered and balanced the <u>Eitel</u> factors, the Court finds that entry of default

10     judgment is proper on all claims. On this basis, the Court GRANTS the Motion.

11     **D.     Amount of the Default Judgment**

12         King asks the Court to award statutory damages against Xie for his willful and

13     unauthorized use of the King's trademarks, and Amazon Services seeks damages on its breach of

14     contract claim. (Mot. at 13-17.) Plaintiffs do not seek damages on their CPA claim. The Court

15     reviews both requests.

16         King correctly notes they it may seek statutory damages between $1,000 to $2,000,000

17     per mark given that Xie's failure to defend this action constitute an admission their infringement

18     of the two marks at issue was willful. (Mot. at 14 (citing 15 U.S.C. § 1117(c)(1); <u>Derek Andrew,</u>

19     <u>Inc. v. Poof Apparel Corp.</u>, 528 F.3d 696, 702 (9th Cir. 2008).) As such, King may seek statutory

20     damages ranging between $9,000 and $18,000,000, given the nine marks at issue. <u>See</u> 15 U.S.C.

21     § 1117(c)(1). King asks the Court to award statutory damages based on trebling the total sales of

22     counterfeit King-branded products, for a total of $571,152. (<u>See</u> Mot. at 13-15; Haskel Decl. ¶

23     7.) The Court finds this damages request to be reasonable, in light of the nature of the deceptive

24

1    scheme, the scope of the sales, Xie's involvement, as well as the need for compensation,

2    deterrence, and punishment. The Court therefore awards King damages in the amount sought.

3         The Court also finds Amazon's request for damages against Xie for the refunds it made

4    to be reasonable and appropriate. The Court awards Amazon $132,986 in damages. (<u>See</u> Haskel

5    Decl. ¶ 7.)

6    **E.    Injunctive Relief**

7         The Court finds it appropriate to enter a permanent injunction against Xie on the terms

8    Plaintiffs request. "As a general rule, a permanent injunction will be granted when liability has

9    been established and there is a threat of continuing violations." <u>MAI Sys. Corp. v. Peak</u>

10   <u>Computer, Inc.</u>, 991 F.2d 511, 520 (9th Cir. 1993). And the Lanham Act authorizes "the 'power

11   to grant injunctions according to principles of equity and upon such terms as the court may deem

12   reasonable, to prevent the violation of any right' of the trademark owner." <u>Reno Air Racing</u>

13   <u>Ass'n., Inc. v. McCord</u>, 452 F.3d 1126, 1137 (9th Cir. 2006) (quoting 15 U.S.C. § 1116(a)).

14        A plaintiff seeking permanent injunctive relief must demonstrate: "(1) that it has suffered

15   an irreparable injury; (2) that remedies available at law, such as monetary damages, are

16   inadequate to compensate for that injury; (3) that, considering the balance of hardships between

17   the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest

18   would not be disserved by a permanent injunction." <u>eBay, Inc. v. MercExchange, L.L.C.</u>, 547

19   U.S. 388, 391 (2006).

20        The Court finds that all four <u>eBay</u> factors favor entry of a permanent injunction. First,

21   based on the admitted allegations in the Amended Complaint, Xie's trademark infringement and

22   violations of the CPA have caused irreparable harm to Plaintiffs' goodwill and reputation and

23   have caused them to incur expenses to prevent further damage. Second, Plaintiffs have shown

24

that monetary damages alone will not necessarily prevent Xie from engaging in further infringing conduct. Given Xie's decision not to appear in this case, there can be no assurances that they will no longer engage in the conduct at issue in this case. This satisfies the Court that monetary damages alone are insufficient. Third, the equities favor Plaintiffs, who seek to enjoin Xie from engaging in illegal conduct that benefits only him. This favors Plaintiffs and the requested injunction. Fourth, an injunction prohibiting Xie from engaging in further conduct that infringes on Plaintiffs' trademarks and violates the CPA will serve the public interest. The Court GRANTS the Motion and ENTERS the following PERMANENT INJUNCTION against Xie and each of his officers, agents, servants, employees, and attorneys, and all others in active concert or participation with him who receive actual notice of this Order from:

1. Selling counterfeit or infringing products in Amazon's stores;

2. Selling counterfeit or infringing products to Amazon or any Amazon affiliate;

3. Manufacturing, importing, distributing, offering to sell, or selling any product using King's brand or trademarks, or which otherwise infringes King's intellectual property, in any store or in any medium; and

4 Promoting or advertising through social media, or any other method or channel of communication, any product using the King's brand or trademarks without King's authorization;

5. Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities listed in (a) through (c) above.

The Court also retains jurisdiction over this case for the purpose of enforcing this Order and Injunction.

1

### CONCLUSION

2       The Court finds that Plaintiffs are entitled to entry of default judgment in their favor and

3   for an order enjoining Xie from further conduct that violates the Trademark laws and the CPA.

4   As explained above, the Court GRANTS the Motion for Default Judgment and

5   PERMANENTLY ENJOINS Xie on the terms specified above. Plaintiffs' counsel is hereby

6   directed to serve a copy of this Order and Injunction on Xie.

7       The clerk is ordered to provide copies of this order to all counsel.

8       Dated November 13, 2024.

9

10      Marsha J. Pechman
        United States Senior District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 13